## SUPREME COURT—IN BANCO.

*Harris, Ch. J., Judd and M' Cully, J. J.* (*Heard by consent in vacation.*)

## H. J. COOLIDGE *vs.* PUAAIKI AND KEA,—APPEAL TO THE SUPREME COURT IN BANCO.

A LABOR contract executed on the part of the master by his wife, who was left as manager of the plantation in his absence from the kingdom, although without his authority in writing, binds both parties.

The agent to take acknowledgment having received his appointment in anticipation of the date when the acknowledgment statute took effect, his acts thereafter are valid.

It will not invalidate a labor contract that it is not precise in terms as to the kind of labor to be performed and limited as to place.

It is erroneous to bring cases under labor contracts as crown prosecutions.

H. J. Coolidge *v.* Puaaiki and Kea.

OPINION OF THE COURT BY HARRIS, C. J.

These are two actions originally brought in the Police Court of Honolulu on contracts for labor; the first contract being for a term of five months, dated the 3d of November, 1876, at $12 per month, upon which an advance of $39 is acknowledged to have been received; and the second is dated the 13th of November, 1875, for twelve months, at $10 per month, upon which an advance of $35 has been received. The first one is signed by H. J. Coolidge, per M. A. Coolidge; and the second signed by H. J. Coolidge.

It is made to appear that, at the time of signing the contract with Puaaiki, Mr. Coolidge was out of the country, temporarily, and had left his plantation in charge of his wife, who conducted all the business, and carried on the plantation generally.

Now it is said that this contract is not binding upon Puaaiki, because that Mrs. Coolidge had no authority, in writing, from her husband, and could not bind him so as to make him liable to the penal terms of the 1423 Section of the Civil Code, which enacts: That if, on complaint of the servant, the master should be found "guilty of any cruelty, misusage or violation of any of the terms of the contract, the laborer shall be discharged from all obligations of service, and the master shall be fined in a sum not less than five nor more than one hundred dollars, and in default of the payment thereof be imprisoned at hard labor until the same is paid."

It is not alleged that there has been any violation of any terms of the contract on the part of the employer; and it is admitted that Mr. Coolidge returned to the country after the contract had been made in his name, and resumed the carrying on of the plantation himself.

The point in the case seems to be that there is no denial of Mrs. Coolidge's authority, but on the contrary an admission of it, and indeed an express recognition of it by her husband in this and similar cases after his return. She was acting as

H. J. Coolidge v. Puaaiki and Kea.

manager of the plantation during her husband's absence and did all the duties of a manager.

Now if we were to hold that it was necessary for her to have an authority in writing to do this especial act of hiring labor, it would be necessary for any other manager to have it. The employment of labor seems to fall within her authority as manager, and if she were lawfully authorized to act as manager, it was not necessary that she should be authorized in writing. Her act certainly bound her husband to the performance of every condition of the contract contained, not only in the contract itself, but those required by the statute; and therefore there is no failure of "mutuality" of contract, and, indeed, Mr. Coolidge's subsequent adoption of her acts was equivalent to his previous authority. There seems to have been a mistake made at the argument in the idea that this act did not fall within her authority as wife. Neither did it, but it did fall within her authority as manager of the plantation, and in our opinion, even bound her husband to the penalties of the 1423 Section, so far as they could be enforced at any time against the owner of any plantation. It will be observed that the imprisonment clause in said Section is a mere means of enforcing the payment of the fine. The question raised under the 1423 Section seems to be not of much weight, for it would be impossible to imprison an absentee owner or a company of share-holders, and yet when the agent keeps all the terms of the contract the other party to the contract would be bound by it.

Secondly, it is said that the contract is not binding on the defendants, because the agent, G. Barenaba, who took the acknowledgment to the contract, was appointed some days before the law could go into effect, to wit: on the 28th of September.

It is alleged that the law under which this acknowledgment was taken and which is amendatory of the Act of the 29th of July, 1872, passed His Majesty's signature on the

25th of September, 1876, and was not published until the 11th of October, and therefore could not come into operation until the 21st of October, whence an argument is drawn that the appointment of the agent who took the acknowledgment of the contract of Puaaiki was inoperative and void, and continued so for all time.

Whether the argument to the effect that this particular law could not go into operation until ten days after publication on the Island of Oahu, is valid or invalid, it is certain that the law had gone into operation on the 3d day of November, at which date the acknowledgment was taken; and the 4th Section of the Civil Code, which is referred to, can not in any way affect the authority of government to appoint officers under a law which is to go into operation within ten days. And clearly it is the duty of government to appoint officers in such time that they may be ready to carry out the provisions of the law when it shall come into force. And it is proper that the public may have seasonable notice of the person so authorized. The law itself (Section 4) says that its object is to put a limit to the time, when ignorance of the law may be plead as a defence.

Thirdly, it is urged against these contracts that they do not indicate in what labor the defendants are to be employed, and that they are not sufficiently particular with regard to the place of performing the labor; and the 1417 Section is quoted to support that proposition. The section reads as follows: "Any person who has attained the age of twenty years, may bind himself or herself, by written contract, to serve another in any art, trade, profession or other employment, for any term not exceeding five years."

Puaaiki's contract reads "that the said party of the second part promises to perform such labor for H. J. Coolidge or his agent in the district of Koolaupoko, Island of Oahu, as the said party of the first part shall direct." This is a clear contract to perform services as a general laborer or servant; and the Hawaiian version, which is not a literal rendering (as it

ought to be perhaps) has it "ma ka mahiai, etc," that is to say "farming, etc.," and the place designated in Puaaiki's contract is in the district of Koolaupoko. This is a clear contract to perform reasonable, ordinary acts of labor as he may be directed in the employer's usual and ordinary business.

Now, there is no allegation that the men have been required to perform any unusual and extraordinary labor. The most that can be said of the contracts is that they are loose as far as regards the style of labor to be performed and were probably meant to be so by both parties,—so likewise with regard to the place where it was to be performed. The laborers signed the contract intelligently and there is no allegation made that either of the parties here have been sent to any place or subjected to any exposure which was not reasonably contemplated by themselves when they signed the contract. If they wished to confine themselves to any particular kind of labor, they should have themselves caused it to have been designated in their contract; so likewise, if they had wished the space, over which they were to be sent, to have been specially limited, they should have caused it to be inserted in their contract. The contracts themselves are not unusual or unreasonable in their forms and requirements.

These cases were entitled "King *vs.* Puaaiki," and "King *vs.* Kea." The King is not a proper complainant in such cases. In no respect do they fall within the duties of the public prosecuter. The employer in this case is seeking to enforce his private contract and makes use of the provisions of the law for that purpose. The intitulation should be in this case H. J. Coolidge *vs.* Puaaiki, as we have made it, by consent, and if a different habit has prevailed, the entering of cases of this nature hereafter should be in accordance with his ruling. The judgment of the Police Magistrate is affirmed.

W. R. Castle, for plaintiffs.

E. Preston, for defendants.

Attorney General Hartwell, for the crown, on point of Barenaba's appointment.